COMMONWEALTH of Pennsylvania,
Appellee,

v.

Harry DENGLER, Appellant.

Superior Court of Pennsylvania.

Submitted April 14, 2003.
Filed Feb. 20, 2004.

Jeanne Trivellini, Reading, for appellant.

Alisa R. Hobart, and Dennis J. Skayhan, Asst. Dist. Attys., Reading, for Com., appellee.

Before: JOYCE, KLEIN, JJ. and McEWEN, P.J.E.

KLEIN, J.

¶ 1 Harry Dengler appeals from the judgment of sentence imposed by the Court of Common Pleas of Berks County after he pled guilty to sexual offenses involving his 12–year–old niece. Dengler seeks review of the trial court's determination that he is a sexually violent predator (SVP) under Megan's Law II, 42 Pa.C.S.A. §§ 9791–9799.7. He also challenges the trial court's failure to conduct a *Frye*[1] hearing before admitting the expert testimony of the state assessor.

¶ 2 This case presents an issue of first impression in Pennsylvania: whether the psychological or psychiatric testimony of an expert at an SVP proceeding is "novel" scientific evidence subject to the *Frye* standard of admissibility. We conclude that it is not. We also conclude that the evidence was sufficient to support the finding that Dengler is an SVP and reject Dengler's constitutional claims. Therefore, we affirm the judgment of sentence.

¶ 3 According to the affidavit of probable cause, 34–year–old Dengler was home with his 12–year–old niece, R.K., on April 27, 2001. R.K. was in Dengler's bedroom watching a movie when Dengler entered the room and locked the door behind him. After sitting with R.K. for a while, Dengler removed the girl's pants and underwear while she resisted. He then tried to remove her shirt and bra, but she resisted so he could not get them off. Dengler fondled and kissed the girl's breasts over her clothing and fondled her vagina, inserting his finger and performing oral sex. Den-

gler stopped when he heard R.K.'s mother knock on the bedroom door. Dengler opened the door and ran out, leaving R.K. on the bed while she was naked from the waist down. Dengler later admitted to these activities to the police.

¶ 4 Dengler pled guilty under a negotiated plea agreement to one count each of aggravated indecent assault and corruption of minors.[2] Following a hearing on July 18, 2002, the trial court found that Dengler is an SVP under Megan's Law II and sentenced him to 2½ to 10 years in prison for assault and a consecutive sentence of 5 years' probation for corruption. Dengler's motion to modify his sentence was denied.

¶ 5 On appeal, Dengler claims that: (1) the trial court erred in admitting the expert testimony of Veronique N. Valliere, Psy.D., without conducting a *Frye* hearing; (2) the evidence was insufficient to support the trial court's SVP designation; and (3) Megan's Law II is unconstitutional on a multitude of grounds. Because we reject each of these claims, we affirm.

## I. Applicability of *Frye* to Expert Testimony

¶ 6 Dengler argues that the expert testimony of Dr. Valliere was subject to the *Frye* standard of admissibility of scientific evidence and under that standard, it was inadmissible. It is clear that *Frye* is still the law in Pennsylvania. *See Grady v. Frito–Lay, Inc.,* —— Pa. ——, 839 A.2d 1038, 1044–45 (2003).

¶ 7 The holding of *Frye*, reiterated in *Grady,* is that "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." *Id.* at 1043–44. While that rule is

---

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

2. 18 Pa.C.S.A. §§ 3125(7) and 6301(a), respectively.

clear, we have been struggling with some of the definitions.

¶ 8 Dengler claims that Dr. Valliere's testimony should not have been admitted because she made a subjective assessment using terms such as "sexually violent predator" and "mental abnormality," which are not generally accepted in the psychological community and have no clinically significant meaning in her field of expertise.

¶ 9 Our research reveals no Pennsylvania appellate decision addressing the applicability of *Frye* in the context of an SVP proceeding. Thus, we are presented with an issue of first impression: whether the psychological or psychiatric testimony of an expert at an SVP hearing is "novel" scientific evidence subject to *Frye*. After careful review, we conclude that it is not.

¶ 10 We begin our analysis with *Trach v. Fellin,* 817 A.2d 1102 (Pa.Super.2003) (*en banc*), this Court's most recent pronouncement regarding *Frye*'s applicability. In *Trach,* an *en banc* panel addressed the circumstances under which a party seeking to exclude expert scientific evidence may test its admissibility under *Frye.* The Court noted that a *Frye* analysis is not triggered every time science enters the courtroom; it only applies when an expert seeks to introduce *novel* scientific evidence. *Id.* at 1110; *see* Pa.R.C.P. 207.1 cmt.

¶ 11 The question then becomes what is "novel" when it comes to science. We do not need to have a *Frye* hearing every time an expert will testify that a broken leg causes pain. Conversely, astrology and lie detector test results are not admissible despite the fact that they have been around for many years and cannot qualify

as "new." Therefore, "novel" must be something different from "new," which could be original, striking, unusual or strange.[3]

¶ 12 The majority in *Trach* did not use "novel" as a synonym for "new," but merely said that to require a *Frye* hearing, the scientific evidence must be *"in some sense, novel." Trach,* 817 A.2d at 1110 (emphasis supplied).

¶ 13 Not every scientific opinion is either new or original—some are the kind that are offered all the time. As the majority said in *Trach,* "Clearly, however, our supreme court did not intend that trial courts be required to apply the *Frye* standard every time scientific experts are called to render an opinion at trial, a result that is nothing short of Kafkaesque to contemplate." *Id.*

¶ 14 The issue then becomes whether the analysis by a psychologist of the sexual propensities of a defendant convicted of sex crime are "novel" in that they are new, original, striking, etc. The *Trach* court noted that *Frye* has been applied to such scientific mechanisms as voice print analysis, systolic blood pressure deception testing, and DNA testing. *See id.* at 1109–10.[4] The Court ultimately held that *"Frye* only applies to determine if the relevant scientific community has generally accepted the principles and methodology the scientist employs, *not* the conclusions the scientist reaches, before the court may allow the expert to testify." *Id.* at 1112; *see Grady,* 839 A.2d at 1045–46.

¶ 15 With these principles in mind, we must now determine whether expert psychological or psychiatric testimony offered at an SVP proceeding is "novel" scientific evidence subject to *Frye.*

---

3. *See* Merriam–Webster Online Dictionary, available at *http://www.m-w.com/cqi-bin/dictionary?book=Dictionary & va=novel.*

4. The dissent in *Trach,* recognizing the difficulty with defining "novel" in this context, pointed out that the term can also mean having no precedent or unusual. 817 A.2d at 1123 & n. 20 (Klein, J., dissenting).

This question has been addressed recently in a number of other states with sexual predator statutes similar to Pennsylvania's.[5] Courts have held that expert psychiatric or psychological testimony at an SVP proceeding is not subject to *Frye* because it is not novel scientific evidence. *See, e.g., Westerheide v. State,* 767 So.2d 637 (Fla.Dist.App.2000); *People v. Ward,* 71 Cal.App.4th 368, 83 Cal.Rptr.2d 828 (1999); *see also In re Detention of Bolton,* 343 Ill.App.3d 1223, 279 Ill.Dec. 286, 800 N.E.2d 128 (2003) (noting that "a psychologist's or psychiatrist's opinion as to an individual's future dangerousness is generally admissible when that opinion is based upon clinical observation or the evaluator's personal experience"); *People v. Therrian,* 113 Cal.App.4th 609, 6 Cal.Rptr.3d 415 (2003) (*Frye* hearing not required where actuarial test was merely starting point and not sole basis for psychologist's opinion regarding offender's risk of recidivism); *Logerquist v. McVey,* 196 Ariz. 470, 1 P.3d 113, 123 (2000) ("*Frye* is inapplicable when a qualified witness offers relevant testimony or conclusions based on experience and observation about human behavior for the purpose of explaining that behavior.").[6]

¶ 16 We find *Westerheide, supra,* particularly instructive. Following his convic-

tion for sexual assault, Westerheide was found to be an SVP under the Jimmy Ryce Act, Florida's SVP statute. At trial, Westerheide challenged the trial court's admission of expert psychological testimony that he would reoffend on the ground that it did not satisfy the *Frye* standard of admissibility. 767 So.2d at 656–57. Although he abandoned the *Frye* issue on appeal, the District Court of Appeal nonetheless addressed it, noting that "Florida courts have consistently held that the *Frye* analysis does not apply to this type of expert testimony." *Id.* at 657. The court explained:

Courts in other jurisdictions that have specifically addressed application of the *Frye* analysis to expert testimony in cases involving sexually violent predator acts substantially similar to Florida's Act have held that *Frye* does not apply. . . .

The admission of expert testimony from psychologists and psychiatrists for the purpose of predicting future dangerousness caused by mental illness or abnormalities is nothing new or novel to the law. . . . [A]lthough this type of expert testimony is not amenable to mathematical precision, we find that predictions of future dangerousness are sufficiently ac-

---

**5.** While we are not bound by cases from other jurisdictions, "we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Trach,* 817 A.2d at 1115.

**6.** Courts have reached the opposite result, however, when expert testimony at an SVP proceeding is based on the results of actuarial risk-assessment tools. These tools are usually objective tests used to determine a sexual offender's risk of recidivism by calculating a numeric risk percentage. *See, e.g., Collier v. State,* 857 So.2d 943 (Fla.Dist.App.2003) (expert's pure opinion testimony not subject to *Frye,* but actuarial technique used to assess offender is subject to *Frye*) (*per curiam*); *In re Commitment of R.S.,* 339 N.J.Super. 507,

773 A.2d 72 (App.Div.2001) (applying *Frye* standard to expert's use of actuarial assessments), *aff'd,* 173 N.J. 134, 801 A.2d 219 (2002). *But see People v. Erbe,* 344 Ill.App.3d 350, 279 Ill.Dec. 295, 800 N.E.2d 137, 150–51 (2003) (actuarial risk-assessment tools are not novel scientific evidence subject to *Frye*). Here, there is no indication in either her report or testimony that Dr. Valliere relied on actuarial tests in concluding that Dengler satisfies the criteria for an SVP. Dr. Valliere, in fact, testified that she did not use such tests during her evaluation. (N.T. SVP Hearing, 7/18/02, at 33–36.) Therefore, we do not reach the question of whether expert testimony at an SVP proceeding that is based on actuarial risk-assessment tools is subject to *Frye.*

curate and reliable to be admissible. We are not alone in this decision. Courts in other jurisdictions have reached the same conclusion in cases involving application of statutory schemes similar to the Florida Act that commit violent sexual predators for control, care, and treatment.

. . .

Predictions of the likelihood of reoffense under the [Jimmy Ryce] Act may be made by qualified experts with a sufficient degree of accuracy that renders such evidence reliable for admission into evidence.

*Id.* at 657–58 (citing cases). Thus, the District Court of Appeal upheld the admission of the experts' testimony without a *Frye* hearing. *Id.* at 659; *see also Ward*, 83 Cal.Rptr.2d at 831–32 (experts' testimony regarding defendant's likelihood of reoffense was not subject to *Frye*; *Frye* only applies to novel devices or processes, not to psychiatrists' or psychologists' predictions of future dangerousness, diagnoses of mental illness, or assessments of mental deviances or abnormalities).

¶ 17 We are persuaded by and agree with the rationale of these cases. We therefore hold that psychological or psychiatric testimony of an expert at an SVP proceeding is not novel scientific evidence subject to *Frye*.

¶ 18 Dr. Valliere, a licensed psychologist, was asked to evaluate Dengler and render an expert opinion as to whether he met the criteria for an SVP as set forth in Megan's Law II. The statute itself provides the factors that the expert is to consider, in-cluding the offender's prior offense history, his mental and behavioral characteristics, and "criteria reasonably related to the risk of reoffense." 42 Pa.C.S.A. § 9795.4(b); *see Commonwealth v. Maldonado*, 838 A.2d 710, 712 (Pa.2003) (state assessor must determine whether person satisfies criteria for SVP "based upon various statutorily-prescribed, risk-related criteria and guidelines, as well as any other generally-applicable standards established by the [Sexual Offenders Assessment] Board").[7]

¶ 19 There is nothing new or novel about expert testimony based on the application of these statutory criteria. *See Therrian*, 6 Cal.Rptr.3d at 417, 419–20 (holding that expert testimony based on factors such as offender's deviant sexual interests, participation in sex offender treatment, and substance abuse was not novel scientific evidence subject to *Frye*). As Dr. Valliere explained, the Megan's Law criteria were not created by the legislature arbitrarily but are the result of a body of psychological literature and research on the subject of sexual predators and their risk of recidivism. (N.T. SVP Hearing, 7/18/02, at 32–33.) We agree with the trial court that "[i]t would be illogical, if not actually perverse, to ask Dr. Valliere to apply Megan's Law terms to her assessment only to exclude her testimony for use of those terms." (Trial Court Op., 10/10/02, at 5.)

¶ 20 In sum, while Dr. Valliere's opinion testimony was scientifically founded, the *methodologies* she used to evaluate Dengler (*i.e.*, review of his prior offense history, reliance on psychological literature and research, and her own experience evaluat-

---

7. In *Commonwealth v. Bey*, 841 A.2d 562, 565–66 (Pa.Super.2004), this Court held that an inquiry into a sexual offender's likelihood of reoffense requires expert testimony because mental defects or personality disorders, which are predictors of future dangerousness, "are discoverable and identifiable only by scientific methodology." This Court noted that "the

Sexual Assessment Board is, by statute . . . comprised of 'psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders,' 42 Pa.C.S.A. § 9799.3, and thus qualified to conduct that aspect of the discovery process." *Id.* at 566.

ing sexual predators) were not in any sense new or novel. *See Trach, supra; accord Tucker v. Community Med. Ctr.*, 833 A.2d 217 (Pa.Super.2003). Accordingly, Dengler's argument that the trial court erred in failing to hold a *Frye* hearing is unpersuasive. The trial court properly admitted Dr. Valliere's testimony.

## II. Sufficiency of the Evidence

■ ¶21 Megan's Law II defines an SVP as:

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is to determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792. The determination of a defendant's SVP status may only be made after an assessment and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, "must be able to conclude that the factfinder found clear and convincing evidence that the individual is a sexually violent predator." *Commonwealth v. Krouse*, 799 A.2d 835, 840 (Pa.Super.2002) (*en banc*), *app. denied*, 573 Pa. 671, 821 A.2d 586 (2003). We conclude that the evidence here was sufficient.[8]

¶22 Dr. Valliere, the Commonwealth's expert, testified that Dengler has a mental abnormality in the form of deviant sexual arousal toward young females. Dengler

was convicted in 1992 for the rape of a 13–year–old girl. He later sexually assaulted a 15–year–old family friend and, in this case, his 12–year–old niece. The two most recent incidents occurred in Dengler's home. It is evident that Dengler took advantage of his opportunity and access to his victims. Dr. Valliere found it particularly significant that Dengler claimed the victims were the aggressors who initiated the sexual activity, which was at odds with the victims' versions of the events. (N.T. SVP Hearing, 7/18/02, at 14–16.) According to Dr. Valliere, this type of disclosure reveals the sexual offender's fantasy world and often motivates him to continue offending. (*Id.* at 16–17.) In her report, Dr. Valliere explained Dengler's mental disorder as follows:

Mr. Dengler is driven to repeatedly sexually assault young girls due to his sexual arousal to them, potentially exacerbated by organic contributors to his behavior. Mr. Dengler has already formed a pattern of assaultive behavior to young girls. He has three documented victims. In fact, Mr. Dengler is so motivate[d] to assault children, he assaulted his last victim soon after his arrest for his second victim. Even facing incarceration did not prevent him from offending.

(Report of Veronique N. Valliere, Psy.D., 1/4/02 ("Valliere Report"), at 6.)

¶23 Dr. Valliere testified that Dengler probably also meets the criteria for a personality disorder, although she could not specify which one. (N.T. SVP Hearing,

8. Our review of a sufficiency of the evidence claim is plenary. *Krouse*, 799 A.2d at 837. As with any sufficiency claim, we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status "only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required

by the statute has been satisfied." *Id.* at 838; *see also Maldonado*, 838 A.2d at 715 (defining clear and convincing evidence standard for purposes of Megan's Law as evidence " 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue' ") (citation omitted).

7/18/02, at 25–29.)[9] This is not fatal to the Commonwealth's case, however, because the statute requires that the defendant suffer *either* a mental abnormality *or* personality disorder. *See* 42 Pa.C.S.A. § 9792.

¶ 24 As to the risk of reoffense, Dr. Valliere testified that Dengler's risk of recidivism was evidenced by the fact that he was arrested for a sexual offense in February and arrested on similar charges three months later. Dr. Valliere also cited other risk factors, including Dengler's history of drug and alcohol abuse and maladjustment to criminal supervision, as he violated both probation and parole on his prior sexual charges. He has also refused sexual offender treatment. (N.T. SVP Hearing, 7/18/02, at 22.) Dengler has had multiple victims and has exhibited a pattern of recurring behavior. Based on Dengler's documented behavior and history, she opined that he is likely to continue to be a sexual offender in the future. (N.T. SVP Hearing, 7/18/02, at 48.)

¶ 25 We conclude that Dr. Valliere's report and testimony established by clear and convincing evidence that Dengler has a mental abnormality, in the form of sexual deviance toward young females, which makes him likely to reoffend in the future. *See Maldonado, supra; Krouse, supra.* Therefore, we affirm the trial court's SVP designation.

### III. Constitutionality of Megan's Law II

 ¶ 26 Finally, Dengler amasses numerous challenges to the constitutionality of Megan's Law II, many of which are premised on the assumption that the statute's registration, notification, and counseling requirements are punitive in nature. Our Supreme Court recently addressed this question and held that the registration, notification, and counseling requirements of Megan's Law II are nonpunitive and thus do not inflict criminal punishment. *Commonwealth v. Williams,* 832 A.2d 962, 986 (Pa.2003); *accord Commonwealth v. Rhoads,* 836 A.2d 159 (Pa.Super.2003). Furthermore, each of Dengler's specific constitutional claims was rejected by this Court in *Commonwealth v. Howe,* 842 A.2d 436, 2004 WL 112765 (Pa.Super.2004). We are bound by these decisions and accordingly reject these claims.

¶ 27 Judgment of sentence affirmed.

---

**9.** In her report, Dr. Valliere stated that Dengler likely meets the diagnostic criteria for personality disorder not otherwise specified. She also said that because of his history of head injuries, Dengler may meet the criteria for personality change due to head injury. Regardless of the source, Dr. Valliere explained, Dengler possesses the traits of impulsivity, poor judgment, lack of empathy, and disregard for the consequences of his behavior, all of which contribute to his likelihood of reoffense. (Valliere Report at 6.) She noted that while some of Dengler's behavior may be related to his head injury, "[t]here are no records of him assaulting men, animals, or other things that he is not aroused to. So, the fact that he is abusing young girls is significant even in light of his injury." (*Id.*)