## Commonwealth v. Jester

C.P. of Bucks County, no. 1159-2009.

*Edward Mounir Louka,* for Commonwealth.
*Stephen H. Shantz,* for defendant.

BATEMAN, *J.,* March 4, 2010—On April 20, 2009, Christopher Jester (appellant) pleaded guilty to 10 counts of disseminating photographs of children involved in sex acts,[1] 10 counts of possession of child pornography,[2] 10 counts of criminal use of a communication facility,[3] and 10 counts of displaying obscene or sexual materials.[4] Sentencing was deferred in order for appellant to be evaluated by the Sexual Offender Assessment Board.

On September 23, 2009, a hearing before the undersigned was held for the purpose of determining appellant's sexual offender classification (SVP hearing); a sentencing hearing immediately followed. At the SVP hearing, this court concluded that the Commonwealth had met its burden of proof and classified appellant as a sexually violent predator (SVP) pursuant to 42 Pa.C.S. §9792. Appellant was then sentenced to nine to 21 years in a state correctional institution with 19 years of probation to run consecutive. On October 10, 2009, appellant filed a motion to modify and reconsider his sentence, and a hearing was scheduled for November 25, 2009. At the hearing, appellant's motion was granted and the sentence imposed on September 23, 2009 was vacated. Appellant was resentenced to a total of seven-and-a-half to 21 with 12 years of probation to run consecutive.

Appellant filed a notice of appeal on December 28, 2009, and this court issued an order on December 29, 2009, directing appellant to file a statement of matters complained of on appeal within 21 days. On January 19,

---

1. 18 Pa.C.S §6312(c)(1).
2. 18 Pa.C.S. §6312(d)(1).
3. 18 Pa.C.S. §7512(a).
4. 18 Pa.C.S. §5903(a)(1).

2010, appellant did so. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we file this opinion.

## STATEMENT OF MATTERS
## COMPLAINED OF ON APPEAL

Appellant raises the following two issues on appeal:

"(1) Appellant believes and therefore avers that the court abused its discretion in sentencing him to serve not less than seven and a half years nor more than 21 years in a state correctional facility for possession of child pornography, display of obscene materials, and criminal use of a communication facility by not considering appellant's mitigating evidence.

"(2) Appellant believes and therefore avers that the evidence presented to the court was insufficient as a matter of law to establish by clear and convincing evidence that he is a sexually violent predator." See statement of matters complained of on appeal ¶¶1-2.

## FACTS

During October of 2008, Corporal Dennis Long of the Pennsylvania State Police was contacted by Corporal Robert Erdely, also of the Pennsylvania State Police, who was assigned to the Bureau of Criminal Investigations, computer crime division. N.T. 4/20/09 p. 15. Erdely reported that on November 9, 2008, he conducted an undercover operation and identified a computer participating in the distribution of child pornography over the internet via the file-sharing program, "Limewire." N.T. 4/20/09 p. 15. The computer was located at Internet Protocol (IP) address 68.37.178.1. N.T. 4/20/09 p. 15.

Erdely discovered 829 files being offered by the computer at the above IP address and identified several child pornography video files. N.T. 4/20/09 p. 16. By way of court order, Erdely learned that the IP address belonged to a Deborah Fisher, located at 360 West Paletown Road in Quakertown, Bucks County, Pennsylvania. It was further discovered that appellant had a vehicle registered to that address. N.T. 4/20/09 p. 16.

On January 20, 2009, Trooper Paul Iannace and Corporal Long went to said address to execute a search warrant. That search warrant yielded numerous video files of child pornography as well as photographs of child pornography on appellant's computer and additional child pornography images on a CD-ROM in appellant's trunk; the computer and CD-ROM were then seized. N.T. 4/20/09 p. 17. During the interview that followed with Corporal Long, appellant gave conflicting statements regarding his involvement with, and use of, child pornography. Appellant first admitted that he had downloaded and viewed images of child pornography and stated that he would masturbate to an image of child pornography, and when he was ready to climax, he would think of an old naked woman as negative reinforcement or a nice adult female as positive reinforcement. N.T. 4/20/09 p. 17. Appellant stated that he referred to this practice as "adverse treatment" used to help prevent his "urges" of harming children. N.T. 4/20/09 p. 17. By engaging in this practice, appellant believed that he was "not offending children," though he did admit to having inappropriate thoughts towards children. He then reiterated that he used child pornography to break him of his thoughts of sexually assaulting children. N.T. 4/20/09

p. 18. During that same interview, however, appellant also stated that he had been collecting these images to show his therapist how easy it was to obtain pornography over the internet. Appellant further claimed he wanted to warn the public about the hazards of the internet. N.T. 4/20/09 p. 17.

At the SVP hearing on September 23, 2009, Dean Dickson, a member of the Sexual Offender Assessment Board since 1996, concluded within a reasonable degree of professional and psychological certainty that appellant met the criteria under the law for a sexual violent predator.[5] N.T. SVP hearing 9/23/09 p. 9. Dickson based this assessment on appellant's voluminous criminal history, dating back to age 12. Appellant's criminal record indicates that he began molesting three different intrafamilial victims, who were between the ages of 6 and 10 years old, when appellant, himself, was 10 years old.[6] N.T. SVP hearing 9/23/09 p. 11. In 1986 at age 13, appellant admitted that he molested a 10-year-old girl and his 6-year-old brother. In 1987, still at 13 years of age, appellant indecently assaulted a 7-year-old male at the Delta School.[7] In 1989, while at Mathom House,[8] appellant was described as manipulative, bullying, very cruel,

---

5. The parties entered into a stipulation, prior to the testimony, which qualified Mr. Dickson as an expert in the assessment and treatment of adult sexual offenders. N.T. SVP hearing 9/23/09 pp. 3-4.

6. This court notes the discrepancy between this age and the age appellant's criminal history began, age 12. This is because appellant was not charged with any crimes at age 10, but later admitted to offending at that age.

7. The Delta school is a private school located in the Northeast section of Philadelphia that caters to children with special needs.

8. Mathom House is a treatment facility for adolescent sexual offenders located in Doylestown, Bucks County, PA.

and a predatory pedophile. The following year at Mathom House, appellant was the subject of an investigation of sexual acting out between him and three other residents involving anal sex, mutual masturbation and oral sex. N.T. SVP hearing 9/23/09 p. 12. Later that year, appellant was adjudicated delinquent and was described as being "aggressively homosexual, difficult to handle, and on the prowl for any sexual activity that may come his way." N.T. SVP hearing 9/23/09 p. 12. Appellant was placed in a program known as LaSaQuick,[9] but was discharged because he had sexual contact with another resident there. As a result, he was placed in the sexual offender program at the Youth Development Center (YDC) in New Castle, PA. N.T. SVP hearing 9/23/09 p. 12. After being released from the YDC program, appellant returned to Mathom House, where there were allegations that he attempted to seduce a 13-year-old boy who was in treatment with him. In 1993, Mathom House staff described appellant as "an entrenched pedophile" and stated that he "shows no interest in surrendering his arousal to children." N.T. SVP hearing 9/23/09 pp. 12-13. Eventually, appellant was removed from Mathom House because he persisted in "grooming and seductive attentions" to yet another 13-year-old child. N.T. SVP hearing 9/23/09 p. 13.

While at Mathom House, appellant underwent a plethysmographic evaluation, which involves placing a ring around the subject's penis and then showing either nonpornographic pictures or audiotapes of sexual situations. N.T. SVP hearing 9/23/09 p. 13. This evaluation revealed

9. LaSaQuick is a residential treatment center located in Lycoming County, Pennsylvania. Residents at LaSaQuick have been adjudicated or court ordered into treatment.

appellant's highest reaction was to 6- and 7-year-old females, and his second highest reaction was to 10- and 11-year-old males. A report generated from this testing indicated appellant's preferred sexual partners are children. N.T. SVP hearing 9/23/09 p. 13. While at Mathom House, appellant insisted that he did not want his deviate arousal totally removed and that some arousal would serve as a reminder of the dangers of reoffending; this indicated to Mathom House that appellant was a fixated pedophile.[10] N.T. SVP hearing 9/23/09 pp. 13-14.

In 1995 at age 22, he was arrested by Warrington police for interacting or "playing" with 9- and 10-year-old children. At that time, appellant indicated that he had been molesting children since he was 12 or 13 years old and that he preferred children between 8 and 13 years of age. N.T. SVP hearing 9/23/09 p. 14. Appellant further admitted that he touched children inappropriately and enjoyed licking their genitals. N.T. SVP hearing 9/23/09 p. 14. Appellant admitted to possessing photos of naked children and claimed he was collecting a book to show others the evil of our society in promoting child pornography. N.T. SVP hearing 9/23/09 p. 14. In 1997, appellant was arrested for biting a 9-year-old in the crotch area and again for grabbing the buttocks and breast area of another child.

Based on the above history, Dickson testified that appellant met the *Diagnostic and Statistical Manual of Mental Disorders,* fourth edition, for the mental abnormality of pedophilia. N.T. SVP hearing 9/23/09 p. 10. Dickson stated that the mental abnormality of pedo-

10. A fixated pedophile is one who has an entrenched fixated permanent sexual arousal to children. N.T. SVP hearing 9/23/09 p. 14.

philia predisposed appellant to commit sexually violent offenses:

"When a person is properly diagnosed as a pedophile, it means that they have a strong sexual orientation towards children. It may not be exclusive, meaning that a pedophile may be able to engage in sexual relations with age-appropriate males or females, but it means that their primary orientation is toward children. It is the mental abnormality that drives the predatory behavior. When a person is properly diagnosed, which is in this case as a pedophile, it means that they are in danger for continuing acting-out predatory behaviors for the rest of their lives." N.T. SVP hearing 9/23/09 p. 16.

Dickson then testified that appellant additionally has a predisposition for predatory behavior and would forever be a danger to the children of our society. N.T. SVP hearing 9/23/09 p. 17.

This court found the testimony of Dickson credible and accepted it in its entirety. N.T. SVP hearing 9/23/09 p. 38. Based on the facts of the current offense, appellant's prior offense history, characteristics of the appellant, and his propensity to reoffend, this court found that the Commonwealth had met its burden and classified appellant as a sexually violent predator. N.T. SVP hearing 9/23/09 pp. 38-43.

At the sentencing hearing, which immediately followed, defense counsel introduced evidence of appellant's childhood, including information that appellant himself had been a victim of physical and sexual abuse starting at age 8. N.T. sentencing 9/23/09 p. 4. There was also information that appellant was exposed to pornography at an early age and lacked the proper parental

supervision. N.T. sentencing 9/23/09 p. 5. Defense counsel also stated that appellant's two children were placed in foster care in 2003 and adopted out, thereby terminating appellant's parental rights. N.T. sentencing 9/23/09 p. 5. It was further indicated that appellant had suffered bullying during his junior high and high school years and has been diagnosed with PTSD and ADHD. N.T. sentencing 9/23/09 pp. 5-6. Appellant then exercised his right to allocution and after detailing his childhood for the court, appellant stated the following:

"Child pornography, I don't like that stuff, sir. I really don't. What made me think I was going to stop child pornography? And that's really what I wanted to do. I wanted to do something good for a change. . . .

"Instead of saying, 'Yo,' going to Corporal Long or going to the police and saying, 'Look, I found this on my computer; I don't like it,' instead I went and got stupid. I thought I was going to stop child pornography. I was without medication, I was without any treatment and all that stuff. I lost it. I lost all realities of life. You want to believe me, your honor, you can. If you don't, either way. That's how I feel. I wanted to do something good for a change. I wanted to do something good. I can't change the world. I wanted to change the world. . . .

"I thought I could change things. It's more than wrong, it's unethical, it's wrong, and always I see, every kid I saw in there I saw my daughter's face and son's face." N.T. sentencing 9/23/09 pp. 11-13.

This court found appellant's statement insincere and unpersuasive. While this court took into consideration the tragic nature of appellant's childhood, it was out-

weighed by appellant's substantial criminal history, his failed attempts at treatment, his lack of remorse for the victims of child pornography, and the permanent danger appellant poses to the children of the community demanded a period of total incarceration. In sentencing appellant, this court stressed the gravity of these crimes by saying:

"You are without hesitation in my mind a danger to the community. I think if I check my notes, Mr. Dickson said that you cannot be cured, that you are predisposed to commit these crimes, that you are a permanent danger to children in our society. I don't think a stronger statement could be made about an individual who has ever appeared in my courtroom. Because of you there's a market for this stuff. Children are being abused everywhere, as you point out, in other countries, and they're being victimized by people because people like you watch it. You have, whether you want to admit it or not, contributed to the emotional destruction of those children that are in those images. Do you understand what I'm saying?

"They've been victimized and they will bear the scars of that victimization for the rest of their lives, much like you have. You've been victimized. But they've been victimized because people like you collect it, they watch it, they find self-gratification by watching it and having it. You have victimized, contributed to the victimization of these children.

"I find that a sentence, based upon all of these reasons, based upon the facts of this case and the testimony of Mr. Dickson, that a period of total incarceration is necessary in order to protect the community. To do otherwise

would depreciate the seriousness of the offense." N.T. sentencing 9/23/09 pp. 26-27.

Accordingly, appellant was sentenced to nine to 21 years in a state correctional institution with 19 years of probation to run consecutive.

At his reconsideration hearing, appellant stated that at his previous sentencing hearing, he had misrepresented his reasons for possessing the child pornography. N.T. 11/25/09 p. 6. Appellant related that he lied because he was upset after hearing Mr. Dickson's testimony and because his family failed to show up to support him. N.T. 11/25/09 p. 7. Appellant also reiterated the impact that his childhood had on him. N.T. 11/25/09 pp. 4-5. Appellant stated that he was there to take full responsibility for his actions and that this court had made an impression on him when we stated that viewing child pornography was not a victimless crime. N.T. 11/25/09 pp. 5-6. At that time, this court expressed reservations about the statements being made by appellant, but did note that the appellant was beginning to show signs of remorse and a "grain of sincerity." However, as expressed to appellant, there is no doubt in this court's mind that appellant could still not be cured and remained a danger to the children of society. After taking into consideration all of the evidence presented at the SVP hearing and sentencing, along with appellant's statements made at the resentencing hearing, this court vacated the sentence imposed on September 20, 2009 and resentenced appellant as follows: three-and-a-half to seven years in a state correctional facility on Count 1; two to seven years in a state correctional institution on Count 2; two to seven years in a state correctional institution on Count 3; seven years

probation on Count 21 and; five years of probation on Count 31. These sentences were ordered to run consecutive to, and not concurrent to, one another for a total of seven-and-a-half to 21 years in a state correctional facility followed by 12 years probation. N.T. 11/25/09 pp. 21-22.

## DISCUSSION

Appellant first contends that this court abused its discretion when fashioning appellant's sentence by not considering the mitigating evidence. It is well-established law that the sentencing function is a matter vested in the sound discretion of the trial court whose judgment will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Green,* 494 Pa. 406, 431 A.2d 918 (1981); *Commonwealth v. Meo,* 362 Pa. Super. 328, 524 A.2d 902 (1987), *allocatur denied,* 516 Pa. 632, 533 A.2d 91 (1987). When reviewing sentencing matters, great weight must be given to the sentencing court as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Fries,* 362 Pa. Super. 163, 523 A.2d 1134 (1987), *allocatur denied,* 515 Pa. 619, 531 A.2d 427 (1987).

At both his sentencing and reconsideration hearing, appellant offered the following mitigating evidence: Appellant had been a victim of physical and sexual abuse beginning at age 8; appellant was exposed to pornography at an early age; appellant lacked proper parental supervision; appellant was bullied during junior high school and high school and; appellant's two children

were placed in foster care and later adopted out, thus terminating appellant's parental rights. Furthermore, appellant accepted responsibility for his crimes at the reconsideration hearing. In fashioning a sentence, this court took all of these factors into consideration. As the above-quoted passage illustrates, we acknowledged that appellant's childhood was nothing short of tragic and that he, himself, had been victimized. We also acknowledged appellant's willingness to accept responsibility for his crimes at his reconsideration hearing and reduced his sentence because of this. However, this court was, and remains to be, very troubled by the length of appellant's criminal history, the number of victims he has offended against, the numerous failed attempts at rehabilitation, appellant's own statement that he did not want to be fully rehabilitated, and the testimony of Dean Dickson, wherein he stated that appellant would be a permanent danger to the children of our society. It is for all of above reasons that a sentence of seven-and-a-half to 21 years of incarceration followed by 12 years of probation was imposed on appellant, and appellant's claim of abuse of discretion fails.

Appellant next avers that the evidence presented at the SVP hearing was insufficient to establish by clear and convincing evidence, that appellant is a sexually violent predator. A thorough review of the records indicates that the evidence presented by the Commonwealth at the SVP hearing held before the undersigned on September 23, 2009 establishes, by clear and convincing evidence, that appellant is a sexually violent predator.

A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense as set

forth in section 9795.1 and who is determined to be a sexually violent predator under section 9795.4 due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. §9792.[11] Section 9792 goes on to define "mental abnormality" as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." "The determination of a defendant's . . . status as a sexually violent predator may only be made after an assessment and hearing before the trial court." *Commonwealth v. Hitner,* 910 A.2d 721, 729 (Pa. Super. 2006). At that hearing, the Commonwealth must present clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. *Commonwealth v. Dengler,* 843 A.2d 1241, 1246 (Pa. Super. 2004). "The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trial court] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.'" *Commonwealth v. Maldonado,* 576 Pa. 101, 109, 838 A.2d 710, 715 (2003).

On September 23, 2009, this court heard expert testimony from Dean Dickson of the Sexual Offender Assessment Board. During this testimony, Dickson relied

---

11. Appellant does not contest that he was convicted of a sexually violent offense. Section 9792 goes on to list factors to be considered when an assessor formulates an opinion regarding a defendant's SVP status. Appellant does not allege that Dean Dickson did not properly consider these factors.

upon, among other things, past police reports, appellant's past criminal record including his juvenile record, reports from three previous treatment centers, and evidence recovered upon the execution of a search warrant in this instant case to form the opinion that appellant was an SVP. Dickson recounted appellant's rather extensive criminal record that spanned nearly two and a half decades and included multiple sexual offenses as well as repeated failed treatment programs. During those 25 years, appellant physically offended between 10 and 15 children, and while there was no physical contact for this instant offense, appellant has offended a countless number more through the possession and distribution of child pornography. As early as age 16, appellant was described as a predatory pedophile. Appellant also underwent plethysmographic testing as a teenager, which indicated that appellant's preferred sexual partners were children.

Dickson concluded that appellant suffers from the mental abnormality of pedophilia,[12] which predisposed appellant to commit sexually violent offenses. Dickson further stated that pedophilia is incurable. It cannot be treated, but can be managed. However, appellant spent most of his teen years in treatment centers for sexual offenders and continues to reoffend well into adulthood. More convincing to this court than the multiple years of failed treatment are appellant's own statements that he

---

12. The *Diagnostic and Statistical Manual of Mental Disorders,* fourth edition (DSM) describes pedophilia as, "Over a period of at least six months recurrent, intense sexually-arousing fantasy, sexual urges, or behaviors involving sexual activity with a prepubescent child or children, generally age 13 years or younger, and the fantasy, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. And that the person is at least 16 years and at least five years older than the child or children that are victimized."

160

does not want his sexual desires for children to be eliminated. Dickson then opined that a diagnosis of pedophilia predisposes a person to commit sexually violent offenses, and appellant himself has a predisposition for predatory behavior. Dickson concluded that appellant was a permanent danger to the children of society.

The above expert testimony of Dean Dickson, as set forth by the Commonwealth, is clear and convincing so that this court can conclude without hesitancy that appellant has met the criteria to be classified as an SVP. For these reasons, we find appellant's claim with regards to this issue meritless.

## CONCLUSION

For the foregoing reasons, we find that the issues that appellant has raised in this appeal are without merit.