[No. C040937. Third Dist. Nov. 20, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL THERRIAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*The opinion is certified for publication with the exception of parts I and III of the
Discussion.

COUNSEL

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Janis Shank McLean and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BLEASE, Acting P. J.**—Defendant Michael Therrian appeals from an order of recommitment entered after a jury determined he remains a sexually violent predator under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et. seq. (SVPA)).[1]

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

■ In the published portion of this opinion,[2] we conclude that when an expert's opinion regarding the likelihood of defendant reoffending is not based solely upon the results of a Static-99 test (which assigns a risk assessment of reoffending), a *Kelly*[3] hearing on the admissibility of expert's testimony regarding the test is not required.

In the unpublished parts of our opinion, we reject defendant's contention the SVPA violates the state and federal constitutional proscriptions against cruel and unusual punishment.

Accordingly, we affirm the order of recommitment.

### BACKGROUND[4]

In 1988, defendant was charged with 14 counts of lewd acts upon a child, ages 10 to 13, in Lake County (Pen. Code, § 288, subd. (a)). He pled guilty to counts II through IV and was sentenced to 10 years in prison. Defendant admitted touching the victim in count II over the boy's clothing while babysitting him in 1987 after the boy had expressed an interest in pornography. Counts III and IV involved 1988 incidents in which defendant admitted to touching three other boys, two of whom he gave money and orally copulated. When interviewed by his probation officer, defendant denied ever using violence and maintained "all four-of the boys wanted to engage in this type of activity."

In 1994, defendant again pled guilty to one count of a lewd act upon a child and was sentenced to eight years in prison. Defendant admitted to touching a 12-year-old boy, the son of a friend of defendant's wife, over the boy's clothing.

In addition to his convictions, defendant has committed other molestations. Though only convicted for molesting two of the 1988 Lake County victims, defendant admitted molesting all four boys involved. Additionally, in 1985, defendant was arrested in San Francisco for molesting a 5-year-old and an 11-year-old boy. While defendant denied doing anything with the 11-year-old boy at trial, he admitted to "having sex" with him in an interview with his probation officer. He maintained, however, that he never touched the five-year-old boy.

---

[2] The Reporter of Decisions is directed to publish the opinion except for parts I and III of the Discussion.

[3] *People v. Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240] (*Kelly*).

[4] Some of the following facts are taken from this court's unpublished opinion in a prior appeal from defendant's initial order of commitment. (*People v. Therrian* (Feb. 28, 2001, C032087).)

On April 9, 1998, prior to the completion of defendant's sentence for the 1994 conviction, the San Joaquin County District Attorney's Office petitioned to have defendant committed as a sexually violent predator under Welfare and Institutions Code section 6600 et seq. A jury sustained the petition and the court ordered him committed to the Department of Mental Health for two years.

On December 13, 2000, the People filed a petition for recommitment to extend defendant's commitment for two years. At defendant's jury trial, the People presented the testimony of psychologist Dr. Amy Phenix and psychiatrist Dr. Gabrielle Paladino. Both mental health experts opined that defendant suffers from a diagnosed mental disorder that makes him likely to engage in predatory and sexually violent criminal behavior in the future. Both mental health experts gave defendant a score on the Static-99 test during their evaluations.

The Static-99 test is an actuarial instrument that allows an evaluator to place sexual offenders in different risk categories based on historical (static) factors such as age, marital status, the number of prior offenses, the relationship of the offender to the victims and the gender of the victims. After identifying the particular characteristics of the offender, the Static-99 test assigns a numeric score to them. The total score of the test is a percentage chance of the defendant's likelihood of being convicted for a future sexual offense.

Dr. Phenix's application of the Static-99 test indicated a 52 percent chance that defendant will reoffend within 15 years. Dr. Paladino scored defendant one point higher on the Static-99 test. Dr. Phenix testified that the Static-99 test was only the beginning of her analysis of the risk that defendant would reoffend. She explained that psychologists do not have actuarial instruments that encompass all the known risk factors obtained from research on sexual reoffenders. Consequently, she examined risk factors outside the Static-99 test that are both static and dynamic in nature. They included deviant sexual preference or interests, participation in sex offender treatment, developmental risk factors, cooperation with supervision, intimacy deficits, self-recognition of problem, substance abuse, and mood state.

In this evaluation the process of determining the likelihood of defendant reoffending requires adjusting the actuarial risk assessment. Yet, even if she were to entirely disregard the Static-99 test, her clinical opinion, based on known research, was that defendant is likely to reoffend.

Although Dr. Paladino also applied the Static-99 test to defendant, her opinion that defendant is likely to reoffend was independent of the actuarial

score. She opined that defendant was in the highest classification for sex offending—"in a class almost by himself." While she did use the Static-99 test to get a "general thumbnail estimate of where [she] thought [defendant] would fall," she did not rely on the test and her opinion that defendant is likely to reoffend would not change in its absence.

With respect to the reliability or accuracy of the Static-99 test, Dr. Phenix testified that the developer of the Static-99 test is continuing to revise the instrument and has never said it was perfect. Dr. Paladino testified that she was not aware of a study showing that adjusting the actuarial risk assessment has been tested and found to be accurate and that the Static-99 test does not evaluate dynamic risk factors that impact risk assessment.

Finally, Dr. John Podboy testified on behalf of defendant. He opined that defendant's behavior was opportunistic, not predatory, and that defendant had control over his behavior. He testified that the Static-99 test is a work-in-progress and its reliability is unknown. He opined that the factors considered in the Static-99 test are important and must be considered, but objected to using the assessment as an "arithmetic personality profile."

The jury found defendant was a sexually violent predator within the meaning of the SVPA and he was civilly recommitted to the Department of Mental Health for two years, commencing on February 10, 2001.

## DISCUSSION

### I

#### MOOTNESS[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

#### ADMISSIBILITY OF THE EVIDENCE

The Sexually Violent Predators Act (SVPA) is aimed at " 'a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes.' " (*People v. Otto* (2001) 26 Cal.4th 200 205 [109 Cal.Rptr.2d 327, 26 P.3d 1061].) To be classified as a sexually violent predator, a person must have been "convicted

---

[*]See footnote, *ante*, page 609.

of a sexually violent offense against two or more victims," and suffer from a "diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

Defendant argues the testimony of the People's experts regarding the use and results of the Static-99 test should have been excluded as a violation of the test set forth in *Kelly*.[5]

In *Kelly*, the Supreme Court held the admissibility of expert testimony based on "a new scientific technique" requires proof the technique is reliable. (*Kelly, supra*, 17 Cal.3d at p. 30.) The technique is reliable if the proponent can show: "(1) the technique has gained general acceptance in the particular field to which it belongs, (2) any witness testifying on general acceptance is properly qualified as an expert on the subject, and (3) correct scientific procedures were used in the particular case."[6] (*Wilson v. Phillips* (1999) 73 Cal.App.4th 250 [254, 86 Cal.Rptr.2d 204].)

*Kelly* applies to unproven techniques or procedures that appear "in both name and description to provide some definitive truth which the expert need only accurately recognize and relay to the jury," such as "machines or procedures which analyze physical data," because "[l]ay minds might easily, but erroneously, assume that such procedures are objective and infallible." (*People v. Stoll* (1989) 49 Cal.3d 1136, 1156 [265 Cal.Rptr. 111, 783 P.2d 698].) "However, absent some special feature which effectively blindsides the jury, expert opinion testimony is not subject to *Kelly/Frye*." (*Id.* at p. 1157.) "In most other instances, the jurors are permitted to rely on their own common sense and good judgment in evaluating the weight of the evidence presented to them. [Citations.]" (*People v. Venegas* (1998) 18 Cal.4th 47, 80 [74 Cal.Rptr.2d 262, 954 P.2d 525].)

As explained in *People v. McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709]: "When a witness gives his personal opinion on the stand—even if he qualifies as an expert—the jurors may temper their acceptance of his testimony with a healthy skepticism born of their knowledge that all human beings are fallible. But the opposite may be true when the evidence is produced by a machine: like many laypersons, jurors tend to ascribe an inordinately high degree of certainty to proof derived from an apparently 'scientific' mechanism, instrument, or procedure. Yet the aura of infallibility that often surrounds such evidence may well conceal the fact that

---

[5] Defendant moved in limine to exclude this evidence on this basis; the motion was denied.

[6] This foundational requirement, formerly referred to as the *Kelly/Frye* test, is now referred to as the *Kelly* test or rule. (*People v. Soto* (1999) 21 Cal.4th 512, 515, fn. 3 [88 Cal.Rptr.2d 34, 981 P.2d 958].)

it remains experimental and tentative. [Citation.] For this reason, courts have invoked the *Kelly-Frye* rule primarily in cases involving novel devices or processes such as lie detectors, 'truth serum,' Nalline testing, experimental systems of blood typing, 'voiceprints,' identification by human bite marks, microscopic analysis of gunshot residue, and hypnosis [citation], and, most recently, proof of guilt by 'rape trauma syndrome' [citation]. In some instances the evidence passed the *Kelly-Frye* test, in others it failed; but in all such cases 'the rule serves its salutary purpose of preventing the jury from being misled by unproven and ultimately unsound scientific methods.' [Citation.]" (*People v. McDonald, supra,* 37 Cal.3d at pp. 372–373, overruled on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896, 914 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

Moreover, as explained by the Supreme Court in *People v. Stoll, supra,* 49 Cal.3d 1136: " 'We have never applied the *Kelly/Frye* rule to expert medical testimony, even when the witness is a psychiatrist and the subject matter is as esoteric as the reconstitution of a past state of mind or the prediction of future dangerousness, or even the diagnosis of an unusual form of mental illness not listed in the diagnostic manual of the American Psychiatric Association . . .' " (*Id.* at p. 1157, quoting *People v. McDonald, supra,* 37 Cal.3d at pp. 372–373.)

The concern addressed by *Kelly* is not present here. Both Drs. Phenix and Paladino testified that, in their opinion, defendant was likely to reoffend in a sexually violent manner and both experts did utilize the Static-99 test during the course of their evaluation. However, Dr. Phenix testified the Static-99 test does not include all the known risk factors and that the process of determining the likelihood of defendant reoffending requires adjusting the risk assessment of the test. The Static-99 test is merely the starting point in the expert's analysis.

Similarly, Dr. Paladino testified that the Static-99 test only takes static factors into consideration and that many other risk factors are considered in forming an expert opinion of likelihood to reoffend. Dr. Paladino's opinion that defendant was likely to reoffend was independent of defendant's Static-99 test score. Thus, both experts testified that use of the Static-99 test was not definitive and that other factors were considered in reaching an opinion.

Moreover, Dr. Phenix testified that the instrument was continuing to be revised and Dr. Paladino testified she was not aware of any study indicating

that the approach of adjusting actuarial risk assessment has been tested and found to be accurate. Thus, the jury was not told that the procedures were objective and infallible.[7]

"No precise legal rules dictate the proper basis for an expert's journey into a patient's mind to make judgments about his behavior." (*People v. Stoll, supra,* 49 Cal.3d at p. 1154.) Psychological evaluation is "a learned professional *art,* rather than the purported exact 'science' with which *Kelly/Frye* is concerned . . . ." (*People v. Stoll, supra,* 49 Cal.3d at p. 1159.)

■ The testimony of both Drs. Phenix and Paladino adequately illustrated this principle by explaining that factors additional to those encompassed in the Static-99 test were utilized and considered in forming their opinions. We are satisfied that no reasonable juror would mistake either expert's use of the Static-99 test as a source of infallible truth on the issue of defendant's risk of reoffending. (See *People v. Stoll, supra,* 49 Cal.3d at p. 1159 [no reasonable juror would mistake expert's reliance on standardized tests such as MMPI as source of infallible truth on personality, predisposition or criminal guilt].)

The court did not err in admitting the expert's testimony regarding defendant's likelihood of reoffending without a *Kelly* hearing. (Accord, *People v. Ward* (1999) 71 Cal.App.4th 368, 374 [83 Cal.Rptr.2d 828] [expert testimony regarding likelihood of sexually violent predator to reoffend not subject to *Kelly* test].)

### III

*Cruel and/or Unusual Punishment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment (order recommitting defendant) is affirmed.

Raye, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2004. Baxter, J., was of the opinion that the petition should be granted.

---

[7] We do not decide whether a *Kelly* hearing is required when an expert's opinion relies solely upon the results of a Static-99 test.

*See footnote, *ante,* page 609.