Filed 7/10/13  P. v. Haywood CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071389 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00833) |
| v. | |
| PHARAOH BUB HAYWOOD, | |
| Defendant and Appellant. | |

This appeal is from defendant Pharaoh Bub Haywood's second trial for being a felon in possession of a firearm and negligently discharging a firearm.  His first trial ended in a mistrial on those charges but with convictions on charges of evading a peace officer, resisting a peace officer, and driving on a suspended license.

On appeal, defendant raises five contentions of ineffective assistance of counsel and one of cumulative prejudice based on his ineffective assistance contentions.  Disagreeing with these contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On a rainy new year's evening in 2011, a Sacramento police officer noticed a Chevrolet "muscle car" driving with its lights off.  The officer turned on the overhead

1

lights of his police car, but the Chevrolet sped away. After a few minutes, the Chevrolet spun out, and the driver, who was defendant, fled on foot, jumping over some residential fences. The officer, who had been chasing defendant, stopped and called for backup when he heard a gunshot. The backup officers found defendant a short time later in a nearby backyard. They could not find a firearm.

Within a few hours of defendant's arrest, a forensic police investigator took gunshot residue test samples from defendant's hands. The samples were examined by forensic criminalist Jason Hooks under an electron scanning microscope. On the sample taken from defendant's right palm, Hooks found four particles of gunshot residue. From that finding, it was Hooks's opinion defendant fired a weapon, handled a weapon, or was in the vicinity of a fired weapon. Eight days later, a gun was found in a backyard approximately 44 feet from where defendant was arrested.

DISCUSSION

Defendant contends his counsel was ineffective in the following five instances: (1) failure to request exclusion of the gunshot residue testimony because it was unreliable; (2) failure to call an expert to challenge the scientific value of Hooks's gunshot residue testimony; (3) failure to adequately cross-examine Hooks; (4) failure to challenge Hooks's "lack of scientific expertise and objectivity"; and (5) failure to introduce (instead of successfully excluding from evidence) defendant's misdemeanor convictions from his first trial and the fact that marijuana was found near defendant when he was arrested. Defendant concludes his contentions with an argument that these five instances of counsel's deficient performance were cumulatively prejudicial. As we explain, we disagree on all points.

I

*Failure To Seek Exclusion Of Gunshot Residue Testimony Based On Unreliability*

Defendant contends defense counsel was ineffective because he failed to ask the court to exclude Hooks's gunshot residue testimony as unreliable based on *People v.*

2

*Kelly* (1976) 17 Cal.3d 24, 30. "In *Kelly*, the [California] Supreme Court held the admissibility of expert testimony based on 'a new scientific technique' requires proof the technique is reliable." (*People v. Therrian* (2003) 113 Cal.App.4th 609, 614, fn. omitted.) "The technique is reliable if the proponent can show," among other things, " 'the technique has gained general acceptance in the particular field to which it belongs.' " (*Ibid.*) Gunshot residue evidence has been deemed reliable and admissible in California for more than three decades. (See, *e.g.*, *People v. Palmer* (1978) 80 Cal.App.3d 239, 251.) In *Palmer*, the court approved the then-new technique of using a scanning electron microscope to observe and identify gunshot residue particles. (*Id.* at p. 250-254.) This was the same technique Hooks used to identify the incriminating gunshot residue particles here. A more than 30-years-old technique (approved in a case that is still good law) can hardly be characterized as new. Accordingly, defense counsel was not ineffective for failing to object to this testimony as unreliable. (See *People v. Osband* (1996) 13 Cal.4th 622, 678 [counsel not ineffective for failing to raise a meritless objection].)

II

*Failure To Call An Expert To Challenge The Scientific Value*
*Of Hooks's Gunshot Residue Testimony*

Defendant contends defense counsel was ineffective because he failed to call an expert to challenge the scientific value of Hooks's gunshot residue testimony. We disagree because defense counsel had a rational strategy for not calling such an expert. (*Strickland v. Washington* (1984) 466 U.S. 668, 689 [80 L.Ed.2d 674, 694-695] [defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy].) As detailed in defendant's hearing to replace his public defender in his first trial pursuant *People v. Marsden* (1970) 2 Cal.3d 118, the public defender had explored and rejected defendant's request to hire a gunshot residue expert to challenge Hooks's testimony. The public defender explained he had talked with another

3

gunshot residue expert and that calling that expert "would probably make it appear to the jury that Jason Hooks from the district attorney's lab had done a very good job analyzing the [gunshot residue]." Thus, the public defender's reasoning for not calling an expert to challenge Hooks's testimony provided a reasonable tactical reason why defense counsel in this case chose the same course of action.

## III

### *Failure To Adequately Cross-Examine Hooks*

Defendant contends defense counsel was ineffective because he failed to cross-examine Hooks on two points:  (1) a Los Angeles Times article reporting that the Federal Bureau of Investigation laboratory had discontinued analyzing gunshot residue in its investigations because there was cross-contamination of samples; and (2) a 2006 Minnesota trial court ruling rejecting gunshot residue evidence as unreliable.  We disagree on both points.

As to the first, defense counsel asked Hooks at least 28 questions covering 16 pages of testimony eliciting the implication that a secondary source of contamination could have caused the gunshot residue evidence here.  The questions covered the gist of the article, namely, that cross-contamination due to somebody else touching the gun or due to other particles could account for a positive test of gunshot residue.  Counsel's performance was not deficient simply because counsel chose this way of eliciting the evidence instead of the way defendant now claims counsel should have.

As to the second, defense counsel reasonably did not cross-examine Hooks about the 2006 Minnesota *trial court* ruling because in 2009, the Minnesota Supreme Court affirmed a trial court ruling that gunshot residue evidence was reliable.  (*State v. Loving* (Minn. 2009) 775 N.W.2d 872, 878-879.)  Defendant's second trial was held in 2012.

# IV

## *Failure To Challenge Hooks's Qualifications*

Defendant contends defense counsel was ineffective because he failed to challenge Hooks's "lack of scientific expertise and objectivity." Not so, because there was no reasonable basis on which to challenge Hooks's expertise, and the record shows defense counsel had a reasonable strategy for challenging Hooks's objectivity.

Hooks's credentials did not provide reason for defense counsel to argue that Hooks was unqualified. Hooks testified he had been a criminalist for 14 years. He had a bachelor of science degree in forensics with a minor in chemistry and had taken several master's courses in forensics and one on scanning electron microscopy and microanalysis, which was used here. His current area of expertise was gunshot residue analysis, for which he had to undergo formal training that included reviewing the scientific literature, discussing the field with other experts, studying known and unknown gunshot residue samples, reviewing other scientists' studies, and undergoing a proficiency examination on gunshot residue analysis. He had testified as a gunshot residue expert in four other cases. His credentials were similar to, if not stronger than, the expert in *Palmer*, the case where the court approved the then-new technique of using a scanning electron microscope to observe and identify gunshot residue particles. (*People v. Palmer, supra*, 80 Cal.App.3d at pp. 254-255.)

To the extent Hooks could have been alleged to have been biased, defense counsel elicited that possible bias. At the very end of cross-examination, defense counsel elicited that Hooks worked for the district attorney's office and that he had never testified as an expert for the defense. This was a reasonable way to show the jury Hooks may have been biased toward the People.

5

V

*Excluding Defendant's Misdemeanor Convictions*

*And Marijuana Possession From Evidence*

Defendant contends defense counsel was ineffective because he successfully petitioned the trial court to exclude from evidence his misdemeanor convictions from the first trial, which included driving on a suspended license, and his alleged possession of marijuana found near where he was arrested. Defendant claims counsel should have petitioned to keep this evidence in because the prosecutor wanted to use his flight to prove conscious possession of the firearm, and the fact that he was driving on a suspended license and possessed marijuana could have provided an alternative explanation for the flight.

Counsel had a reasonable tactical reason for petitioning to exclude this evidence. The evidence ran the risk of prejudicing the jury into thinking defendant's flight-related misconduct was part of a larger crime spree, and thus, the jury would have been more inclined to find defendant guilty on the weapons charges. Defense counsel feared that the jury would hear of these prior convictions and the marijuana possession and would "impugn [defendant's] character." That in hindsight defendant feels counsel should have pursued another strategy does not make the one pursued deficient. Indeed, defendant's second-guessing of trial counsel's strategy is impermissible under the deferential review of counsel's trial tactics that we undertake on a claim of ineffective assistance. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689 [80 L.Ed.2d at p. 694].)

VI

*There Was No Cumulative Prejudice*

Defendant contends the cumulative nature of defense counsel's deficiencies were such that when aggregated together, they prejudiced him. As counsel was not deficient, there are no errors to accumulate for such an analysis.

DISPOSITION

The judgment is affirmed.


                              _____ROBIE_____, J.


We concur:



_____RAYE_____, P. J.



_____HOCH_____, J.