Filed 3/25/21  P. v. Howardkidd CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TEANDRE HOWARDKIDD,<br><br>    Defendant and Appellant. | A159924<br><br>(San Francisco County Super. Ct. No. SCN 230852) |

During a trial in which Teandre Howardkidd was charged with felony burglary with intent to commit a sexual assault (Pen. Code,[1] §§ 220, subd. (b), 460, subd. (a), count one), felony first degree residential burglary (§ 459, count two), felony attempted rape by force, violence, or threat of bodily injury (§§ 261, subd. (a)(2), 664, count three), and misdemeanor elder abuse (§ 368, subd. (c), count four), the jury found Howardkidd guilty of two misdemeanors: simple battery, a lesser included offense of count one, and elder abuse, count four.  The trial court sentenced Howardkidd to credit for time served.

Although Howardkidd was not convicted of a crime requiring that he register as a sex offender (§ 290, subd. (c)), the trial court found that he had

---

[1] All statutory references are to the Penal Code unless otherwise specified.

1

committed the crimes "as a result of sexual compulsion or for purposes of sexual gratification," and ordered that he register as a sex offender pursuant to its discretionary authority under section 290.006, subdivision (a). Howardkidd's sole contention on appeal is that the trial court abused its discretion by ordering sex offender registration in this case. He specifically asserts that substantial evidence does not support either that he committed the offense for purposes of sexual gratification or that he was likely to reoffend. Seeing no merit to these claims, we affirm.

## BACKGROUND

### A.    Evidence Presented at Trial

The victim in this matter, Ms. Y., was 101 years old when she testified at trial in December 2019 with the assistance of an interpreter. She did not speak English. According to Ms. Y., on December 31, 2018, she opened her door in response to a knock, believing the person was a fellow resident of the restricted-access building. A stranger walked inside, washed his hands, laid down on her bed, and pulled out his erect penis. He then pulled down her pants and underwear and pushed his penis towards her. She repeatedly screamed and yelled at him to get out. She grabbed his penis to try and stop him. She pulled on his arm and his clothing to get him off the bed and he eventually left. A surveillance video showed a man climbing the wall of the apartment building and entering the building at around 12:30 p.m. on the day of the incident.

Howardkidd was arrested the next day and admitted he was the man in the surveillance video. Howardkidd's audio interview with the police was played for the jury. Howardkidd claimed he had visited the apartment previously, at which time an Asian lady—whom he described as around 70— told him to come in and invited him to return. When he returned on the day

2

of the incident, she allowed him inside and, after he washed his hands, he gave her a hug. She told him that he was getting her "horny," and they were close to having sex. Howardkidd reported that he touched her leg and her vagina over her clothes but stopped when she said that was enough. He also stated that he put his hands under her pants and that she held his hand while it touched her vagina. Howardkidd claimed he spoke to Ms. Y. in English and she spoke to him in English.

Howardkidd's uncle testified for the defense that he lived on the same floor near Ms. Y. and that Howardkidd would sometimes visit him without calling first. Howardkidd's sister testified that Howardkidd seemed to develop mental health issues after his mother died when he was 17, and that his behaviors appeared to get worse over the course of the prior 10 years. Dr. Laeeq Evered diagnosed Howardkidd as suffering from schizophrenia, which can impair problem-solving and inhibiting behavior. On the day of the incident, Dr. Evered believed Howardkidd's schizophrenia could have been exacerbated by drug use.

Dr. John Greene testified in rebuttal that he had evaluated Howardkidd in October 2019 and concluded that he suffered from substance abuse issues rather than schizophrenia. He opined that neither substance abuse nor mental illness substantially affected Howardkidd's behavior with Ms. Y. on the date of the incident. Dr. Evered testified on surrebuttal, challenging Dr. Greene's interpretation of certain test results and the efficacy of his interview techniques.

## B.    Jury Verdict and Sentencing

The jury began its deliberations in the afternoon of December 6, 2019. On the next court day, December 9, 2019, the jury convicted Howardkidd of the lesser included offense of misdemeanor battery on count one and of

misdemeanor elder abuse on count four. Howardkidd was found not guilty of assault with intent to commit rape (count one), burglary (count two), and attempted rape (count three).

Prior to sentencing, the prosecutor filed a request for the court to order Howardkidd to register as a sex offender pursuant to section 290.006. The prosecutor argued that Howardkidd had clearly committed the offenses of battery and elder abuse "as a result of a sexual compulsion or for purposes of sexual gratification." (§ 290.006, subd. (a).) Moreover, according to the prosecutor, Howardkidd's criminal, substance abuse, and medical histories, the circumstances of the offense, and Howardkidd's " 'well-above average' " risk of recidivism all supported imposition of a registration requirement. Defense counsel opposed the request, arguing that the burdens of registration—such as difficulty in finding housing and employment— outweighed the "slight chance" Howardkidd might re-offend. Defense counsel also challenged the prosecutor's conclusion that the offenses were sexually motivated, claiming they were the result of Howardkidd's delusional belief that Ms. Y. wanted to have sex with him.

According to the probation department's presentence report, Howardkidd's criminal history reflected ten convictions as an adult, including "six theft-related offenses, two weapon-related offenses and one drug-related offense." Howardkidd had accrued multiple arrests and revocations while on probation, leading to unsuccessful terminations and a prison commitment. He was convicted of felony automobile theft with a prior (§ 666.5, subd. (a)) and felony evading a police officer with disregard for safety (Veh. Code, § 2800.2, subd. (a)), after leading law enforcement on a high-speed chase in which he reached speeds of up to 120 miles per hour and forced other vehicles

4

off the road. He received a 44-month prison sentence and was on parole for these offenses when he committed the instant crimes.

The presentence report further detailed a significant substance abuse history. Howardkidd reported daily use of marijuana since 2006, identifying it as his drug of choice. He also reported weekly use of cocaine and methamphetamine since the age of 19, with his last use just days prior to the incident with Ms. Y. Howardkidd used heroin sporadically from 2011 to 2015 but stopped using it due to its side effects. He admitted being under the influence of marijuana and another controlled substance during the commission of these offenses.

Probation scored Howardkidd using the Static-99R, an actuarial measure for risk of sexual offense recidivism. Howardkidd received a score of six, which correlates to a well above average risk of being charged or convicted of another sexual offense within five years of release. In addition, Howardkidd scored " 'High' " for violent and general recidivism risk using the COMPAS risk probability scale assessment. According to probation, "[t]he assessment identified criminal opportunity and criminal personality as top criminogenic needs requiring immediate attention. These results are consistent with [Howardkidd's] impulsive decision-making and substance use."

Probation identified five aggravating factors concerning the instant offenses: a particularly vulnerable victim, numerous prior convictions, a prior prison term, commission of current offenses while on post release community supervision, and unsatisfactory prior performance on parole and probation—and no factors in mitigation. Since Howardkidd had already fulfilled the maximum sentence on each misdemeanor count for which he was convicted, probation recommended that Howardkidd be sentenced to serve one year in

5

county jail, with credit for 733 days served, and that he register as a sex offender pursuant to section 290.

At the sentencing hearing on March 6, 2020, the prosecutor rested on her briefing. Defense counsel stressed the isolated nature of the incident, stating: "He has zero prior similar acts or behaviors in his entire history." She also challenged the finding of the Static-99R that Howardkidd was at well above average risk for sexual re-offense. And she suggested that, if Howardkidd had really wanted to satisfy his sexual needs, he would not have left when Ms. Y. objected to his advances. Finally, defense counsel asked that any registration requirement be limited to ten years and that the court consider suspending the registration requirement while closely monitoring Howardkidd on probation.

The trial court sentenced Howardkidd to 180 days in county jail on counts one and four each, with credit for time served. In determining that sex offender registration was appropriate in the case, the trial court first found that Howardkidd committed the acts for purposes of sexual gratification. The court noted that, while it did not necessarily disagree with the jury's verdicts based on a reasonable doubt standard, that was not the standard applicable to the court's registration decision, explaining: "I'm allowed to consider everything I heard and apply a preponderance of the evidence standard and look at the overall factors in the case."

The trial court then discussed its reasons for imposing the registration requirement, stating: "I think there's very little dispute that [Howardkidd], regardless of whether the etymology [is] his drug use or a delusional system based on late onset schizophrenia or a combination of them both, [Howardkidd] on this particular date thought that the 99-year-old victim was coming on to him and was sexually interested in him." The court concluded it

6

was unnecessary for it to determine the underlying cause or causes, focusing instead on Howardkidd's behaviors. It cited evidence that Howardkidd had suffered from auditory hallucinations and psychosis during the previous several years; he had engaged in "extremely impulsive" behavior with the car chase; he was described by Dr. Evered as exhibiting poor planning, limited capacity to cope, and cognitive distortions; he had disclosed to Dr. Greene that he was high on "crystal and weed" on the day of the incident; and he showed an above average risk of recidivism according to the Static-99R. The court also highlighted evidence from family members that Howardkidd's functioning level had been declining since his mother's death and responded to the argument that this was his first incident of sexually acting out as follows: "We don't know how [Howardkidd's] past behavior really is a predictor of his future behavior. This is the first time that he has, as far as the court knows, sexually act[ed] out in an extreme way like he did here. That's because he unfortunately is getting more ill and his needs for treatment are even greater than when he was previously undiagnosed."

Based on the foregoing factors, the court deemed sex offender registration appropriate. However, while lifetime registration was required at the time of sentencing, the trial court acknowledged that changes to the law effective January 2021 would allow for a tiered registration requirement. (See §§ 290, subds. (d) & (g), 290.006, subds. (b)-(d).) The court suggested that a limited registration period for Howardkidd would be appropriate in the future, stating: "My plan would be to impose the registration requirement according to law now, which is lifetime registration. I'd recommend a ten-year registration period. These are misdemeanors. It's discretionary whether to impose it at all. Whether the Department of Justice decides to follow that or not, that's really up to them. [¶] I certainly would recommend

7

that it be a limited non-lifetime registration, obviously, if there's no issues in the next ten years." This appeal followed.

## DISCUSSION

### A.      The Sex Offender Registration Act (§ 290 et seq. (Act))

"California law has long required persons convicted of certain specified sex crimes . . . to register as sex offenders as long as they live or work in California." (*People v. Mosley* (2015) 60 Cal.4th 1044, 1048 (*Mosley*).)[2] " ' " 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.] ' " ' " (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1196 (*Hofsheier*), overruled on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888; see also *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 78 (*Lewis*) [noting "the purpose of sex offender registration is to keep track of persons likely to reoffend"].) Thus, the registration requirement is regulatory rather than punitive. (See *Mosley*, at pp. 1059-1060, 1062; *Hofsheier*, at p. 1197.)

Section 290, subdivision (c) lists the crimes for which sex offender registration is mandatory. It does not include either battery (§ 242) or elder abuse (§ 368, subd. (c)). The mandatory registration provisions of the Act therefore do not apply to Howardkidd. A trial court, however, has discretion to order "[a]ny person . . . to register pursuant to the [A]ct who is not required to register pursuant to Section 290 . . . if the court finds at the time of conviction or sentencing that the person committed the offense as a result of

---

[2] Effective January 1, 2021, this registration requirement may be for 10 years, for 20 years, or for life depending upon the circumstances of the underlying case. (See §§ 290, subds. (d) & (g), 290.006, subds. (b)-(d).)

sexual compulsion or for purposes of sexual gratification." (§ 290.006, subd. (a).) Should the trial court exercise its discretion to require registration under this provision, the court is required to "state on the record the reasons for its findings and the reasons for requiring registration." (*Ibid.*) "[D]iscretionary registration does not depend on the specific crime for which a defendant was convicted. Instead, the trial court may require a defendant to register under section [290.006] even if the defendant was not convicted of a sexual offense." (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1197-1198.)

When ordering discretionary sex offender registration, " 'the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring . . . registration as a sex offender.' " (*People v. King* (2007) 151 Cal.App.4th 1304, 1308, quoting *Hofsheier*.) "By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) The trial court makes its findings in this context by a preponderance of the evidence. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1058; see also *Mosley*, *supra*, 60 Cal.4th at p. 1052, fn. 4; *People v. McCullough* (2013) 56 Cal.4th 589, 598.) Moreover, " 'the trial court logically should be able to consider all relevant information available to it at the time it makes its decision.' " (*Lewis*, *supra*, 169 Cal.App.4th at p. 79.)

On appeal, we review the imposition of sex offender registration under section 290.006 for abuse of discretion. (See, e.g., *People v. Eastman* (2018)

9

26 Cal.App.5th 638, 648.) "To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it 'falls outside the bounds of reason.' [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) Accordingly, to the extent Howardkidd challenges the evidentiary basis for the trial court's imposition of the registration order, we apply a substantial evidence standard of review to those evidentiary findings.

## B. The Trial Court Did Not Err in Imposing Sex Offender Registration

Howardkidd argues that the trial court abused its discretion in imposing a sex offender registration requirement because he committed the offenses as a result of his psychotic delusions rather than for purposes of sexual gratification. He argues further that the evidence did not support the trial court's conclusion that he was likely to reoffend. Substantial evidence, however, supports both of these determinations.

Howardkidd challenges the trial court's finding that he committed the offenses at issue for purposes of sexual gratification by arguing that his behavior was instead motivated by his delusional state. His argument assumes that being subject to delusions somehow precludes him from acting for purposes of sexual gratification. Howardkidd cites no authority for this proposition. Here, substantial evidence supports the court's finding that

10

Howardkidd committed the offenses for sexual gratification. He pulled down Ms. Y.'s pants and underwear and exposed his erect penis. That he may have done so under the delusion that Ms. Y was interested in his sexual advances does not change the intent behind his behavior. One can reasonably presume that Howardkidd would not have responded in this way had he not been interested in his own sexual gratification.

Next, Howardkidd asserts that evidence he was likely to commit another sexual offense was lacking in his case. Howardkidd relies on *Lewis*, *supra*, 169 Cal.App.4th 70, which states: "Since the purpose of sex offender registration is to keep track of persons likely to reoffend, one of the 'reasons for requiring registration' under section 290.006 must be that the defendant is likely to commit similar offenses . . . like those listed in section 290 . . . in the future." (*Id.* at p. 78.) The Attorney General argues that nothing in the statutory language requires a trial court, at the time of sentencing, to speculate as to the likelihood that a defendant will sexually reoffend. (But see *Mosley*, *supra*, 60 Cal.4th at p. 1048 ["If the conviction is for an offense other than those automatically requiring registration, the court may nonetheless exercise its discretion to impose a registration requirement if the court finds the offense was sexually motivated or compelled, and that registration is justified by the defendant's risk of reoffense."].) We need not resolve this disagreement because substantial evidence supports a finding that Howardkidd was likely to commit a similar sexual offense in the future.

Although this was Howardkidd's first sexual offense, the trial court explained that it could be viewed as part of Howardkidd's escalating impulsive behaviors. The probation report identified impulsive decision-making as part of Howardkidd's top criminogenic needs requiring immediate attention. Dr. Evered described Howardkidd as exhibiting poor planning and

11

cognitive distortions.  Contrary to Howardkidd's contention, these general character traits are also relevant to a determination whether he was likely to re-offend sexually.  Indeed, as the trial court explained to defense counsel, such factors are included in the Static-99R analysis precisely because "they correlate with reoffense."

The trial court also expressed concern that Howardkidd's level of functioning was declining and that he was increasingly in need of treatment. Although Howardkidd argues there is no evidence that he was getting more ill, the court's conclusion was supported by escalating criminal behaviors, the testimony of his sister, and his history of psychiatric contacts over the previous several years.  Further, while appellate counsel posits that Howardkidd, having been diagnosed, would likely now seek treatment and improve, the record suggests otherwise.  Howardkidd had resisted the idea of getting help in the past, and, although the trial court encouraged him to seek treatment, it recognized that it had no power to compel him to do so.

Finally, the trial court took into account the Static-99R score and its finding that Howardkidd represented a "well above average" risk of sexual reoffense.  The court noted that the score HowardKidd received on the instrument, a six, translates into a recidivism rate of "20 percent over five years."  An elevated risk of reoffense under the Static-99R supplies further evidentiary support for the trial court's finding that Howardkidd was likely to reoffend.  Howardkidd argues that his Static-99R score was entitled to very little weight because it is only moderately predictive and is simply a " 'starting point' " for an analysis of the likelihood of sexual recidivism.  (See *People v. Therrian* (2003) 113 Cal.App.4th 609, 615-616.)  As the trial court noted, however, the Static-99R is a validated risk instrument that has long been accepted in judicial proceedings.  And, there is no indication in the

12

record that the trial court placed undue emphasis on this analytical tool. Rather, the court's focus was on Howardkidd's untreated and increasingly dysfunctional behaviors. Under these circumstances, we see no abuse of discretion in the trial court's decision to mandate sex offender registration in this case.

## DISPOSITION

The judgment is affirmed.

_____

SANCHEZ, J.

We concur.

_____

HUMES, P.J.

_____

BANKE, J.

(A159924)

14