Filed 12/20/24

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C098659 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20060359) |
| v. | |
| TRACY ZWERENZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Gary Slossberg, Judge. Affirmed.

Rudolph Kraft III, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

1

After an April 2023 bench trial, defendant Tracy Zwerenz[1] was recommitted to the State Department of State Hospitals (State Hospital) as an offender with a mental health disorder.[2]  Defendant appeals from the recommitment order, arguing substantial evidence did not support the trial court's finding he continued to qualify as an offender with a mental health disorder and the trial court abused its discretion by failing to consider outpatient placement.  The People contend defendant's claims are moot.

We agree defendant's claim pertaining to outpatient placement is moot.  As to defendant's substantial evidence claim, he has demonstrated that equal protection principles may entitle him to review.  The appropriate remedy is to remand the matter "for an evidentiary hearing to allow the state the opportunity to establish a factual basis justifying the disparate treatment of the affected groups."  (*People v. Dunley* (2016) 247 Cal.App.4th 1438, 1453, fn. 14 (*Dunley*); see *People v. McKee* (2010) 47 Cal.4th 1172, 1208-1211; see also *People v. Curlee* (2015) 237 Cal.App.4th 709, 722-723.)  Because we conclude substantial evidence supports defendant's recommitment, however, remanding the matter would be an idle act as defendant cannot show his rights were adversely affected by a purported equal protection violation.  (*People v. Garton* (2018) 4 Cal.5th 485, 501-502 [applying harmless error analysis to equal protection claim]; see *People v. Conley* (2004) 116 Cal.App.4th 566, 576 [" ' "[o]ne who seeks to raise a constitutional question must show that his [or her] rights are affected injuriously by the

---

**1**    Defendant's name appears in the record as "Tracy Lee Zwerenz" and "Tracy Zwerenz."  We use the latter name in this opinion.

**2**    Much of the existing authority regarding these defendants refers to them as mentally disordered offenders.  Such patients are now referred to as " 'offender[s] with a mental health disorder.' " (*Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1095, fn. 3.)

law [that] he [or she] attacks and that he [or she] is actually aggrieved by its operation" ' "].)  Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, the El Dorado County District Attorney filed a petition to recommit defendant as an offender with a mental health disorder pursuant to Penal Code[3] section 2970 et seq.  At trial in April 2023, the trial court heard from several witnesses who worked at State Hospital and testified about defendant's mental health disorder and his conduct in State Hospital.  Dr. Robert Wagner, a psychologist, testified defendant suffered from pedophilic disorder, a severe mental health disorder that can never be in remission, and from recurrent major depression.

Over the course of defendant's commitment, defendant has been encouraged to participate in treatment, including in group programs.  Defendant claimed to Dr. Wagner to have participated in treatment, including sex offender treatment.  No records from State Hospital, however, substantiated that claim nor did defendant provide certificates of completion from the programs when asked.  Defendant did provide a certificate for treatment he took six years before, however, it was not sex offender treatment. According to Dr. Wagner, defendant believed he had completed all the treatment he needed and would attend treatment only if "he thought it was worthwhile."  While Dr. Wagner believed defendant was capable of "tak[ing] care of himself" outside the facility, he believed defendant posed a danger to the community.

Defendant's failure to participate in sex offender treatment groups was the primary basis for Dr. Wagner's belief defendant still posed a danger.  This failure to participate deprived defendant of the opportunity "to develop insight into why [he] molested a child and to explore ways to prevent that from happening in the future."  These sex offender

---

[3]     Further undesignated section references are to the Penal Code.

3

programs, Dr. Wagner explained, would allow defendant to "identify triggers[ and] events in [his] life that possibly led or contributed to the sex offenses. And then [the programs would help him] strategize to have a plan for prevention." Defendant told Dr. Wagner he believed he developed coping skills on his own to prevent him from offending in the future.

Deborah Cotterman, a rehabilitation therapist who interacted with defendant on an almost daily basis, testified that defendant does not take full responsibility for his criminal history and has expressed both appropriate and inappropriate coping skills. Cotterman and Nancy Levario, a psychiatric technician, both recounted an October 2022 incident when defendant argued with a peer and eventually threw the peer's mobility device. Levario also explained that defendant would sometimes refuse his medication and become passive aggressive when waiting for his medication.

Dr. Wagner acknowledged it is "a fair assumption" that defendant's sex drive has decreased since his commitment and will continue to decrease as he ages but could not speak to whether defendant still had a sex drive. Further, at the time of trial, defendant was estimated to have a 2.5 to 3 percent chance of reoffending based on his Static-99 score. This estimate is not based on observations specific to defendant's behavior but is instead based on general groups of sex offenders separated into various demographics.

The trial court found defendant met the criteria for recommitment by presenting a substantial danger of physical harm to others based on his pedophilic disorder and inability to recognize his triggers. In doing so, it explained that defendant's failure to attend treatment groups and develop skills to address his triggers was of primary relevance to its determination. The court also cited to defendant's "unwillingness to seek support and take advantage of . . . resources," as well as the October 2022 incident, which the court thought "demonstrative of [defendant's] inability . . . to control his impulses under stressful circumstances." The court told defendant it was "fundamental" that he attend groups, and that this concern had persisted since his last recommitment hearing the

4

previous year.  While the trial court acknowledged defendant may be a candidate for outpatient treatment, it declined to inquire further because it found defendant was a danger to the public and defendant did not request to be considered for outpatient treatment by filing a separate petition.  Defendant's commitment was extended from January 2023 to January 2024.  Defendant appeals the commitment order.

Following defendant's appeal of the trial court's April 2023 ruling, the district attorney filed another petition for defendant's recommitment in August 2023.  In February 2024, a bench trial was held, and defendant's commitment was extended until January 2025.[4]

## DISCUSSION

"The Mentally Disordered Offenders Act [citation] provides for involuntary civil commitment as a condition of parole for prisoners who are found to have 'a severe mental disorder' if certain conditions are met.  [Citation.]  The commitment is for a term of one year and may be extended annually for an additional year on petition of the district attorney."  (*Dunley*, *supra*, 247 Cal.App.4th at p. 1442, fns. omitted; §§ 2970, subd. (b), 2972, subds. (a), (b).)  "If the court . . . finds [(1)] that the patient has a severe mental health disorder, [(2)] that the patient's severe mental health disorder is not in remission or cannot be kept in remission without treatment, and [(3)] that by reason of the patient's severe mental health disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted."  (§ 2972, subd. (c).)  These factors are characterized as " 'dynamic' " or " 'capable of change over time,' " and " 'must be established at each annual review of the commitment.' " (*People v. Foster*

---

[4]     Defendant's request for judicial notice is denied as moot.  Portions of the trial court's file from defendant's subsequent recommitment proceeding that are relied on by defendant have already been made part of the record through a motion to augment.  As to the remainder of the court's file from defendant's subsequent recommitment proceedings, those documents are irrelevant to resolution of defendant's current appeal.

(2019) 7 Cal.5th 1202, 1207.)  Further, under section 2972, subdivision (d), "[a] person shall be released . . . if the committing court finds that there is reasonable cause to believe that the committed person can be safely and effectively treated on an outpatient basis."

I

*We Will Address Defendant's Substantial Evidence Claim*

Defendant argues the record lacks substantial evidence to support his recommitment and the trial court abused its discretion when failing to consider outpatient treatment.  The People argue these claims are moot.  We agree in part.

Courts generally decide " ' " 'actual controversies by a judgment [that] can be carried into effect, and [do not] give opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law [that] cannot affect the matter in issue in the case before it.' " ' "  (*People v. McCray* (2023) 98 Cal.App.5th 260, 267.) These principles apply in the context of section 2972 proceedings.  (*McCray*, at p. 267; see *People v. Alsafar* (2017) 8 Cal.App.5th 880, 886 [holding that so long as a new petition is timely filed by the prosecutor, an appeal from an expired recommitment order is moot]; see also *Dunley*, *supra*, 247 Cal.App.4th at p. 1445 [because "the nature of [offenders with a mental health disorder] proceedings, in which a new commitment order must be sought every year, issues arising in such proceedings can most often not be decided on appeal quickly enough to provide any relief to the person committed"].)

We first address mootness as to defendant's claim the trial court abused its discretion by failing to consider whether defendant was suitable for outpatient treatment. In that regard, defendant argues his claim is not moot because we can provide him with effective relief by ordering a hearing or his placement in an outpatient program if we determine that is the appropriate outcome.  Defendant does not cite legal authority for the proposition that we can order further hearings or outpatient treatment of a defendant under an expired civil commitment order, and we have found none.  Thus, defendant has

6

failed to establish his outpatient treatment claim is not moot. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 [failure to provide legal authority forfeits contention].)

As to whether defendant's substantial evidence claim is moot, he argues we can provide him with effective relief because equal protection grants him the right against double jeopardy, which would prevent further commitment proceedings after a finding of insufficient evidence. Defendant points to section 1026.5, subdivision (b)(7), which entitles defendants in civil commitment proceedings who were found not guilty by reason of insanity "to the rights guaranteed under the federal and [s]tate Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees." Our Supreme Court has held that these rights include the right against compelled testimony (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 826), which appellate courts have extended to defendants with mental health disorders involved in civil commitment proceedings through the equal protection clause of the California Constitution (*Dunley*, *supra*, 247 Cal.App.4th at p. 1443; accord, *People v. Alsafar*, *supra*, 8 Cal.App.5th at p. 887).

This court has concluded section 1026.5, subdivision (b) extends to defendants found not guilty by reason of insanity the right against double jeopardy because the plain language of the statute extends all rights guaranteed in criminal proceedings to such defendants and the right against double jeopardy " 'could meaningfully apply in any type of adversarial proceeding.' " (*People v. Cheatham* (2022) 82 Cal.App.5th 782, 797-800, italics omitted, quoting *Hudec v. Superior Court*, *supra*, 60 Cal.4th at p. 830.)[5]

---

[5] While our holding in *Cheatham* specified "that a district attorney cannot pursue a second trial to extend a person's . . . commitment when the *first* trial resulted in an extension that is later reversed for insufficient evidence" (*People v. Cheatham*, *supra*, 82 Cal.App.5th at p. 797, italics added), our holding is equally applicable to all extension hearings beyond the first extension hearing because subdivision (b)(8) of section 1026.5 requires commitment extensions be "in accordance with the provisions of this subdivision."

7

Defendant argues that, through the application of the equal protection clause in the California Constitution and the reasoning of *Dunley*, he, as an offender with a mental health disorder, is entitled to the same protections as an offender found not guilty by reason of insanity, which would prohibit retrial upon a finding of insufficient evidence.

For equal protection inquiries under the California Constitution "[t]he only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*People v. Hardin* (2024) 15 Cal.5th 834, 851-852.)

Because defendant could not raise this issue in the trial court and the People have not been afforded a meaningful opportunity to respond to defendant's equal protection argument raised in his reply brief, the proper remedy usually is to remand the matter "for an evidentiary hearing to allow the state the opportunity to establish a factual basis justifying the disparate treatment of the affected groups." (*Dunley*, *supra*, 247 Cal.App.4th at p. 1453, fn. 14, citing *People v. McKee*, *supra*, 47 Cal.4th at pp. 1208-1211, *People v. Curlee*, *supra*, 237 Cal.App.4th at pp. 722-723.) We decline to do so, however, and instead address defendant's substantial evidence claim to determine whether remand will benefit him. (See *People v. Garton*, *supra*, 4 Cal.5th at pp. 501-502; see also Cal. Const., art. VI, § 13 [no judgment shall be reversed unless the error complained of has resulted in a miscarriage of justice].)

II

*Sufficient Evidence Supports Defendant's Recommitment*

Defendant argues the trial court's finding that his pedophilia was not in remission and that he represented a substantial danger of physical harm to others was not supported by sufficient evidence. We disagree.

" 'In considering the sufficiency of the evidence to support [offender with a mental health disorder] findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that [a] defendant is an [offender with a

mental health disorder] beyond a reasonable doubt, considering all the evidence in the light [that] is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding.' " (*People v. Johnson* (2020) 55 Cal.App.5th 96, 107 (*Johnson*).)

A

*The Record Demonstrates Defendant Was Not In Remission*

Defendant argues the trial court's finding his pedophilia was not in remission lacked evidentiary support.  Specifically, he argues the trial court used a standard from the psychological community instead of the legal standard and improperly shifted the burden to defendant given his lack of treatment to prove he was in remission.  We disagree.

The legal definition of "[t]he term 'remission' means a finding that the overt signs and symptoms of the severe mental health disorder are controlled either by psychotropic medication or psychosocial support." (§ 2962, subd. (a)(3).)  While defendant acknowledges this standard, he fails to acknowledge the next sentence of section 2962, subdivision (a)(3).  That sentence provides, "A person 'cannot be kept in remission without treatment' if during the year prior to the question being before the . . . trial court, the person has been in remission and . . . has not voluntarily followed the treatment plan. In determining if a person has voluntarily followed the treatment plan, the standard is whether the person has acted as a reasonable person would in following the treatment plan." (*Ibid*.; accord, *In re Qawi* (2004) 32 Cal.4th 1, 24 ["The 'cannot be kept in remission without treatment' standard can also be found when a person 'has not voluntarily followed the treatment plan' during the year prior to the commitment or recommitment proceeding"].)

Here, the trial court focused on defendant's failure to attend treatment groups for at least six years as a reason to grant the recommitment petition, which we infer the trial court relied on to support its lack of remission finding. (*Johnson*, *supra*, 55 Cal.App.5th

9

at p. 107.) Indeed, the trial court found defendant failed to attend treatment even when there were no barriers to his attendance and treatment was necessary to develop skills needed to maintain remission. The record contains testimony that defendant refused to attend treatment groups and believed he had developed his own coping skills during treatment that would prevent him from offending in the future. Based on this testimony, it was reasonable for the trial court to impliedly find that reasonable people would not rely on their own developed coping skills to prevent reoffense and would instead seek and follow professional treatment. Defendant's citations to authority purportedly demonstrating the prevalence of child sexual abuse images among sexually violent predators not in remission as a means of showing defendant is in remission is misplaced. "When we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.)

At bottom, the trial court based its findings on defendant's failure to attend treatment when it was reasonable for him to do so. Section 2962, subdivision (a)(3) permits such a finding, and the record supports such a finding in this case. Accordingly, sufficient evidence supports the trial court's finding defendant was not in remission.

B

*The Record Demonstrates Defendant Posed*

*A Substantial Danger To The Public*

Defendant argues sufficient evidence does not support the trial court's finding he posed a substantial danger to the public because the record demonstrated he was at a low risk of reoffending. We disagree.

Section 2962 does not define a substantial danger of physical harm except by specifying that this element "does not require proof of a recent overt act." (§ 2962, subd. (g); see *In re Qawi*, *supra*, 32 Cal.4th at p. 24.) However, our Supreme Court has instructed that, while " 'substantial danger of physical harm to others' is without

10

definition," "[i]n context, it appears to mean a prediction of future dangerousness by mental health professionals." (*Qawi*, at p. 24.) " 'A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence to support an extension of the defendant's commitment' " (*People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165), so long as it is not based on a " ' "guess, surmise or conjecture, rather than relevant, probative facts" ' " (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1504).

Dr. Wagner, a psychologist, testified to his opinion that, because of defendant's mental health condition of pedophilia, defendant represented a substantial danger of physical harm to others. Dr. Wagner's opinion was not based on a guess, surmise, or conjecture, but was derived from defendant's limited insight into his disorder, as well as his longstanding unwillingness to attend treatment and learn skills needed to cope with his mental health disorder. (*In re Anthony C.*, *supra*, 138 Cal.App.4th at p. 1504.) In making its ruling, the trial court further considered testimony regarding the October 2022 incident where defendant threw a mobility device during a dispute with a peer, which the court explained demonstrated defendant's inability to control his impulses.

This is more than the evidence found insufficient in *Johnson*, *supra*, 55 Cal.App.5th 96 and *People v. Jenkins* (2023) 95 Cal.App.5th 142, on which defendant relies. In *Johnson*, the appellate court reversed a commitment extension order where the record was devoid of evidence suggesting the 69-year-old defendant's failure to take medication in an unsupervised setting would lead to violence, particularly in light of the fact that he had spent 11 years in the community and had stopped taking his medication for substantial periods of time with no violent repercussions. (*Johnson*, at pp. 99, 107, 108-109.) Moreover, the defendant in *Johnson* was in partial remission, was able to take care of himself, and had not committed a violent act in 30 years. (*Id*. at pp. 101, 104, 111.) The *Johnson* court found, "Such a complete absence of violent or aggressive behavior of any kind over a long period of time is necessarily an important, objective

11

factor that must not be ignored when determining an [offender with a mental disorder] defendant's dangerousness." (*Id*. at p. 110.)

In *People v. Jenkins*, *supra*, 95 Cal.App.5th at pages 146 and 151, the appellate court concluded the defendant did not represent a substantial danger of physical harm to others because "there [was] no evidence [the defendant had] been violent or physically aggressive since her commitment offense in 1999," more than two decades before the recommitment proceedings. At the time of the hearing, the defendant was almost 70 years old, in poor health, and had started to use a wheelchair due to decreased mobility. (*Id*. at p. 153.)

Here, in contrast, the evidence demonstrated defendant engaged in a violent or aggressive act within a year of his recommitment hearing and had not successfully lived outside the structured setting of a state hospital, and nothing indicated he was in poor physical health. Further, defendant's mental health disorder of pedophilia is not treatable by medication, and instead patients with pedophilia must rely on skills learned in sex offender treatment programs, in which there was no record of defendant's participation. Unlike *Johnson* and *Jenkins*, defendant does not pose a risk of harm based on his potential to commit uncontrollable violent outbursts. Defendant's risk is based on his ability to identify triggers that lead to offending and ways to prevent offending, regardless of demographic factors. Because defendant has not participated in treatment programs, substantial evidence supports the trial court's implied finding defendant does not possess the skills necessary to reduce his risk of harm and continues to pose a substantial risk.

Defendant disagrees with this conclusion, arguing his estimated 2.5 to 3 percent risk of reoffending, based on his Static-99 score, overcomes the evidence against him. "The Static-99 test is an actuarial instrument that allows an evaluator to place sexual offenders in different risk categories based on historical (static) factors such as age, marital status, the number of prior offenses, the relationship of the offender to the victims

12

and the gender of the victims. After identifying the particular characteristics of the offender, the Static-99 test assigns a numeric score to them. The total score of the test is a percentage chance of the defendant's likelihood of being convicted for a future sexual offense." (*People v. Therrian* (2003) 113 Cal.App.4th 609, 612.) The Static-99 test is not infallible, and a fact finder is not required to exclusively rely on it to determine an offender's chances of reoffending. (*Id*. at p. 616 [holding that so long as an expert adequately explains other factors considered, "no reasonable juror would mistake [an] expert's use of the Static-99 test as a source of infallible truth on the issue of defendant's risk of reoffending"].)

Dr. Wagner and the trial court considered defendant's Static-99 score. They, however, also relied on other individualized factors personal to defendant, including defendant's failure to attend treatment and develop the necessary skills to prevent reoffending, and his failure to control his impulses. Thus, while defendant's Static-99 score was low, it was but one factor the court considered in granting the recommitment petition, not a dispositive one. (See *People v. Stoll* (1989) 49 Cal.3d 1136, 1159 ["no reasonable juror would mistake an expert's reliance on standardized tests as a source of infallible 'truth' on issues of personality, predisposition, or criminal guilt"].) Considering the whole of the record, as we must (*Johnson*, *supra*, 55 Cal.App.5th at p. 107), sufficient evidence supports the trial court's finding that defendant posed a substantial danger to the public.

DISPOSITION

The judgment is affirmed.

/s/_____
ROBIE, Acting P. J.

We concur:

/s/_____
KRAUSE, J.

/s/_____
FEINBERG, J.